## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Fredrick Dewayne Hines,

        Plaintiff,                                   **Case No. 16cv352 (DSD/SER)**

v.

Tom Roy, et al.,                                **REPORT AND RECOMMENDATION**

        Defendants.

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on Plaintiff Frederick Dewayne Hines's ("Hines") First Motion for Temporary Restraining Order [Doc. No. 13]; Motion for Transfer [Doc. No. 27]; and Second Motion for Temporary Restraining Order [Doc. No. 31].[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1 for a report and recommendation. For the reasons stated below, the Court recommends denying the Motions for Preliminary Relief.

---

[1] For ease of reference, the Court has retitled these motions based on the relief they seek, rather than referring to the titles Hines provided. The Court collectively refers to these motions as the "Motions for Preliminary Relief." Their original titles with the Court's shortened versions are: (1) Document Number 13: Re: Harassment, Threat Imposed by Prison, Requesting Assistance, Health and Safety Concerns, TRO Information, and Injunction to Remove Me from Segregation to "Cell Restriction," "First Motion for Temporary Restraining Order"; (2) Document Number 27: Re: (2) U.S. Marshal Forms, Stillwater Took My Briefs, Addendum, Trial Transcripts, Motions Affidavits, Legal Documents, Need Help, "Motion for Transfer"; (3) Document Number 31: Re: Temporary Injunction, Fear for Life, Legal Work—Evidence Taken by Stillwater, Retaliation, "Second Motion for Temporary Restraining Order." The Court titled Numbers 13 and 31 motions for temporary restraining orders because Hines did not provide notice to Defendants of these motions and they were filed on CM/ECF before Defendants were served and noticed an appearance. *See* Fed. R. Civ. P. 65(b) (listing conditions in which a "court may issue a temporary restraining order without written or oral notice to the adverse party").

There are several other motions pending in this case.[2] For the sake of efficiency, however, the Court finds the best course of action is to issue a recommendation only on the Motions for Preliminary Relief at this time. The Court will issue a separate case management order contemporaneously with this Report and Recommendation addressing the status of the pending motions and other case management issues.

## I. BACKGROUND

Hines is a prisoner of the State of Minnesota and is currently incarcerated at the Minnesota Correctional Facility in Oak Park Heights ("MCF-OPH"). *See* (Letter Dated Apr. 11, 2016) [Doc. No. 21].[3] Hines initiated this § 1983 action on February 12, 2016, against various Minnesota Department of Corrections ("DOC") employees. (Compl. for Violation of Civil Rights Under 42 U.S.C. § 1983, "Compl.") [Doc. No. 1].[4] Hines was incarcerated at the Minnesota Correctional Facility in Stillwater ("MCF-Stillwater") at the time he filed his Complaint, but was later transferred to MCF-OPH. *See* (Compl.); (Letter Dated Apr. 11, 2016). The events described in Hines's Complaint arose at MCF-Stillwater. *See* (Compl.).

---

[2] These motions are: Motion to Dismiss of Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, and Norvak in Their Official Capacities [Doc. No. 38]; Hines's Motion for Leave to File an Amended Complaint [Doc. No. 47]; Hines's Motion to File Amended Complaint Pursuant to Rule 15(a), Fed. R. Civ. P. [Doc. No. 50]; Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, and Norvak in Their Official Capacities' Motion to Stay Discovery [Doc. No. 62]; Motion for the Appointment of Counsel Pursuant to Section(§) 1915 [Doc. No. 71]; and Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, Norvak, Cole, Livingston, and Austreng's Motion to Dismiss [Doc. No. 97].

[3] The Court refers to Hines's letters both by date filed with the Court and by document number. To the extent the date Hines mailed a submission—as opposed to when it was received by the Court—is relevant to the Court's analysis, the Court notes the difference in dates.

[4] Hines's motions for leave to amend the complaint are currently pending before this Court. *See* [Doc. Nos. 47, 50]. But because the Motions for Preliminary Relief were filed prior the Motions to Amend, the Court summarizes only Hines's initial complaint in this Report and Recommendation.

Hines alleges that Defendant Lt. Gloria Andreachi ("Andreachi") and Defendant Sgt. Adam Murphy ("Murphy") and several unidentified correctional officers conspired to steal his legal documents on two occasions in 2015.[5] (Compl. at 5). He argues this action aided "the State" in committing a fraud on the court related to his state criminal conviction. *See* (*id.* at 5–6).

Specifically, Hines alleges that on May 16, 2015, Murphy provided him with the opportunity to shower. (*Id.* at 6). While Hines was in the shower, Murphy facilitated access to his cell for "several unknown correctional officers." (*Id.*). These officers, who were observed by two witnesses, "exchanged several trial transcript(s), [and] record[s]." (*Id.*). Hines's attempts to address the events of May 16, 2015, with MCF-Stillwater through its grievance procedure were unsuccessful. *See* (*id.* at 6–7).

On May 23, 2015, Hines experienced chest pains and MCF-Stillwater employees came to his cell to escort him to the medical unit. (*Id.* at 8). Hines, however, refused to leave his cell without his legal work.[6] (*Id.*). Emergency personnel were called to take Hines for further examination, and Defendant C. Cole ("Cole"), a nurse, and Andreachi both assured Hines that his legal work would be safe while he was at the hospital. (*Id.* at 8–9). Eventually, Hines received permission from Andreachi to take his legal work with him after she searched it. (*Id.* at 9). Before he went to the hospital, Andreachi told another MCF officer that if Hines "goes to surgery" she "want[s] that bag." (*Id.*). Hines alleges that Andreachi told his escort and other MCF employees to exchange his paper work, and to that end, MCF employees carried a black

---

[5]   Andreachi and Murphy appear to be correctional officers at MCF-Stillwater. *See* (Compl. at 4).

[6]   Hines's "legal work" refers to "the states [sic] original brief, the state attorney's brief, [Hines's] pro se supplemental brief and addendum and what [he] had left of trial transcripts [] that were unaltered or exchanged by prison guards on 5-16-2015." (Compl. at 9). Although not specified, the Court presumes these documents relate to the criminal case for which Hines is incarcerated.

3

bag containing "other briefs and transcripts" while escorting Hines. (*Id.* at 10). Hines alleges that several other MCF officers were told to obtain his legal work. (*Id.* at 10–11).

Upon his return to MCF-Stillwater the following day, Hines alleges an unidentified MCF employee separated him from his legal work, and he heard MCF-Stillwater employees "tearing up" his "original brief." (*Id.* at 11–12).

Hines alleges that on May 27, 2015, Murphy made several attempts to "get [him] out of [his] cell [and] away from [his] legal work" by telling him he had a doctor's appointment, psychology appointment, and attorney call. (*Id.* at 13). Hines declined to attend these appointments or answer his attorney's call. (*Id.*). Hines alleges that his attempts to address the events of May 24, 2015, through the prison grievance procedure were unsuccessful. *See* (*id.* at 12–17).

Hines alleges Defendants' actions violate the Eighth Amendment's prohibition of cruel and unusual punishment and the Fourteenth Amendment's promise of equal protection. (*Id.* at 6). He seeks the following relief: $2.5 million from the DOC; a court-ordered "full federal investigation" into his factual allegations; criminal charges against some defendants; $75,000 from Defendant Julie Ryan, Hines's case manager; $50,000 from "each individual named in their own individual capacity"; an injunction preventing those defendants "criminally convicted" of fraud against the court from working for the DOC; "not to be retaliated against in any way"; placement in administrative segregation; prevention from being sent outside of Minnesota or to another institution; and "all additional relief to which the plaintiff is entitled." (*Id.* at 18).

In his Motions for Preliminary Relief, Hines seeks return of certain property from MCF-Stillwater and placement in specific locations within the MCF system. The Court summarizes each motion below.

In his First Motion for Temporary Restraining Order—dated April 3, 2016, and filed April 6, 2016—Hines says that, in retaliation for filing this lawsuit, he is getting threatening looks, he fears "assault by staff and inmates," his food is "slammed" in his cell, his mail is withheld, and MCF-Stillwater staff have been telling other staff and inmates that he is a child molester. (First Mot. for TRO at 1–2).[7] Hines further states that he was told there was a "hit" on him and that when Defendant Kerri Livingston ("Livingston") instructed him to pack and move to a dorm run by Andreachi, he considered it "a direct threat against [his] life."[8] (*Id.* at 3, 4). Hines appears to seek placement in a specific part of MCF-Stillwater, "Restriction in D-Hall, 1st floor, guards side," or in Minnesota Correctional Facility in Moose Lake ("MCF-Moose Lake"). (*Id.* at 3, 5).

In his Motion for Transfer—dated April 15, 2016, and filed on April 20, 2016—Hines states that when he was moved from MCF-Stillwater to MCF-OPH, his letters, documents, trial transcripts, motions, affidavits, copies, "original trial and pre-trial documents," bible, and other belongings were not transferred with him. *See* (Mot. to Transfer). He also states that he does not "want to be beaten or stabbed to death for crimes [he has] been framed for." (*Id.* at 1). Hines asks the Court either for an order returning him to "D-Hall Cell Restriction" at MCF-Stillwater, or an order assigning him to administrative segregation at MCF-OPH with access to a television and radio. (*Id.* at 2).

In his Second Motion for Temporary Restraining Order—dated April 19, 2016, and filed on April 28, 2016—Hines reiterated his statement that his legal work from MCF-Stillwater was not sent to MCF-OPH and will be destroyed. (Second Mot. for TRO). He also states that he is

---

[7]   Although Hines asks for "forms for restraining order and temporary injunctions," the Court construes this document as the motion itself. *See* (First Mot. for TRO at 3).
[8]   Livingston is a correctional officer at MCF-Stillwater. (Compl. at 5).

afraid for his safety if he has to return to the general population of MCF-OPH or is sent to a "more dangerous" prison. (*Id.* at 1) ("I will clearly suffer more from personal injuries, assault, possible death if I'm placed in general population or allowed to be shipped to a much [sic] dangerous and over-crowded prison.").

Hines inundated the Court with letters alleging his life is in danger since the filing of the Complaint and the preceding motions.[9] *See, e.g.*, [Doc. Nos. 21–25, 59, 67–68, 91]. The letters from April 2016 repeat prior allegations regarding Hines's legal work that was not sent from MCF-Stillwater to MCF-OPH; repeat but provide no details regarding any specific threats on Hines's life; and again seek placement in administrative segregation in MCF-OPH, return to MCF-Stillwater, or placement in MCF-Moose Lake. *See, e.g.*, [Doc. No. 21–25]. One letter alleges more specifically that another prisoner called "Beck" has a shank and intends to stab him. (Letter Dated July 6, 2016) [Doc. No. 59]. In another letter, Hines states that MCF-OPH employee Sgt. Lange acted with another inmate who goes by the name "Redneck" in an attempt to kill him. *See* (Letter Dated July 12, 2016) [Doc. No. 68 at 1]. Supposedly, this attack was to take place on July 1, 2016; Hines filed a kite on that date stating that he was suicidal in what appears to be an effort to be removed from his cell. *See* (*id.* at 3–4). After speaking to a therapist, Hines was first returned to his cell, but then was later moved to a cell in the Administrative Control Unit ("ACU"). (*Id.* at 4–5). Hines also stated that on July 8, 2016, he received a pill during medical rounds that was not his prescribed aspirin. (*Id.* at 5). In yet another letter, Hines advised the Court that he has been told by MCF-OPH staff that he is not permitted to refuse placement in a certain type of cell, and claims he is "in a place where they can kill" him because

---

[9] The Court describes some of these letters here. Although the Court has reviewed all of Hines's submissions, it does not summarize them all because they seek the same relief on similar grounds as the summarized letters.

there are "no cameras to catch everything they do." (Letter Dated July 26, 2016) [Doc. No. 91 at 1].

The Motions for Preliminary Relief were filed prior to Defendants' counsel's appearance in this case. Thus, the Court ordered Defendants to respond to the Motions for Preliminary Relief. (Text Only Order Dated June 30, 2016) [Doc. No. 58].[10] In their response, Defendants assert that Hines has been on segregation status at both MCF-Stillwater and MCF-OPH from February 2015, to the date of their response because he has refused placement in less restrictive units and "occasionally violated other discipline rules." (Defs.' Mem. Opposing Pl.'s Mots., "Defs.' Resp.") [Doc. No. 74 at 3–4]. Defendants moved Hines from one segregation unit—Complex 5—to the ACU "to ensure Hines['s] safety after he reported a potential incompatibility with another offender and after a staff member submitted a related confidential incident report." (*Id.* at 4). Defendants argue that Hines has failed to demonstrate that he is entitled to the extraordinary relief of an injunction. (*Id.* at 5). Further, Defendants argue that because Hines has since obtained access to his legal materials from MCF-Stillwater, that portion of the Motions for Preliminary Relief should be denied as moot. (*Id.*).

**II.  DISCUSSION**

As an initial matter, the Court recommends that the Motions for Preliminary Relief be denied to the extent Hines seeks access to his legal materials from MCF-Stillwater. After filing the Motions for Preliminary Relief, Hines informed the Court that his legal materials "would not be destroyed and [he] will be given a chance to review [his] property." (Letter Dated May 13, 2016) [Doc. No. 43]. This information is consistent with Defendants' Response. Defendants

---

[10] This Order also requires Defendants to respond to Hines' Motion for Leave to File an Amended Complaint [Doc. No. 47]. *See* (Text Only Order Dated June 30, 2016) [Doc. No. 58]. As stated above, that motion will be the subject of a separate order issued by the Court.

assert that Hines was permitted to send two footlockers full of personal property from MCF-Stillwater to MCF-OPH. (Aff. of Tammy Wherley, "Wherley Aff.") [Doc. No. 76 ¶ 12]. In addition, Hines's excess property from MCF-Stillwater was sent to MCF-OPH, and Hines was permitted to search for documents he needed. *See* (*id.*). Hines is permitted to have five pounds of paper in his unit due to his segregation status. (*Id.*). In addition, he is allowed to keep one tub of legal materials in the segregation unit, separate from his cell. (*Id.*). Hines has therefore been able to access the legal materials he had at MCF-Stillwater because he is permitted to notify MCF-OPH staff that he would like to exchange some materials in his cell for materials in his tub. (*Id.*). Hines filed a reply to Defendants' Response. (Mem. of Law in Opp'n to Defs.' Resp., "Reply") [Doc. No. 81]; *see also* (Decl. of Fredrick Dewayne Hines, "Hines Decl.") [Doc. No. 82];[11] (Hines Decl.) [Doc. No. 83]. Hines broadly asserts that the facts in Wherley's affidavit are not truthful, he provides no contradictory facts with respect to his property, and included as an exhibit is a letter advising him that arrangements were being made for him to review his property. (Reply at 5); *cf.* (*id.*) (stating that Hines did not bring anything with him from MCF-Stillwater);[12] (Letter from Cathy Nielsen to Hines (May 6, 2016), Ex. 7, Attached to Hines Decl.) [Doc. No. 82-1 at 11]. Thus, the Court concludes Hines has access to his legal materials from MCF-Stillwater. The Court next addresses Hines's requests that the Court order his assignment to specific locations within the DOC and/or units within those locations.

---

[11]   Given the volume of declarations Hines filed, the Court will refer to them as all as "Hines Declaration" followed by the Document Number for ease of reference.

[12]   Hines appears to confuse Wherley's statement that he "was **able** to bring two footlockers worth of property with him when transferred from MCF-[Stillwater] to MCF-OPH" with what he actually did bring with him. *Compare* (Wherley Aff. ¶ 12) *with* (Reply at 5) ("Wherley states that Hines came with two bins of property that is also a lie. Hines didn't have anything."). Regardless of what Hines did or did not bring with him at the time of his transfer, the record reflects that Hines now has access to his materials from MCF-Stillwater.

### A. Legal Standard

A preliminary injunction is issued "to preserve the status quo and prevent irreparable harm until the court has an opportunity to rule on the lawsuit's merits." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). "'[W]hether a preliminary injunction should issue involves consideration of (1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict upon other parties litigant; (3) the probability that [the] movant will succeed on the merits; and (4) the public interest.'"[13] *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (alterations in original) (quoting *Dataphase Sys. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). "The burden of proving that a preliminary injunction should be issued rests entirely with the movant." *Id.* "[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose*, 42 F.3d at 471. Even when a party "raises a serious issue, the purpose of a preliminary injunction is to protect the plaintiff from harms alleged **in the complaint** while litigation is pending." *Frye v. Minn. Dep't of Corr.*, No. 05-1327 (JNE/JJG), 2006 WL 2502236, at *1 (D. Minn. Aug. 29, 2006) (Graham, Mag. J., as adopted by Ericksen, J.).

A preliminary injunction is an extraordinary remedy, and "in the prison context, a request for injunctive relief must always be viewed with great caution because judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration." *Goff*, 60 F.3d at 520 (internal quotation marks omitted); *see also Wickner v. Larson*, No. 09-cv-940 (DWF/JJK), 2010 WL 98940, at *2 (D. Minn. Jan. 11, 2010) (Keyes,

---

[13] These factors are the same whether the relief sought is a preliminary injunction or temporary restraining order. *See, e.g.*, *S.B. McLaughlin & Co., Ltd. v. Tudor Oaks Condo. Project*, 877 F.2d 707 (8th Cir. 1989) (affirming district court's application of *Dataphase* factors to temporary restraining order analysis).

Mag. J., as adopted by Frank, J.) (noting that reluctance to grant injunctive relief "is particularly pronounced where a state prisoner seeks relief in federal court").

    **B.**    **Analysis**

        **1.**    **Relationship to Complaint**

As a threshold matter, Hines's Motions for Preliminary Relief are not related to the claims alleged in his Complaint. Hines's Complaint alleges that correctional officers Andreachi and Murphy—as well as others—conspired to steal legal documents on two separate occasions in 2015. *See, e.g.*, (Compl. at 5). Hines's Motions for Preliminary Relief, in contrast, allege that Defendants are placing his life in danger based on his cell assignment in MCF-OPH. *See, e.g.*, (First Mot. for TRO); (Mot. for Transfer); (Second Mot. for TRO); *see also* [Doc. Nos. 21–25, 59, 67–68, 91]. The Motions for Preliminary Relief are grounded in the Eighth Amendment, which in this context prohibits prison officials from acting with deliberate indifference towards prisoners' safety. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

A Court must construe a *pro se* complaint liberally. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). In his Complaint, Hines refers to the Eighth Amendment only once and makes several references to cruel and unusual punishment. (Compl. at 6, 7, 12, 13, 15, 16, 17). These references, however, do not refer to any threats to Hines's safety. Instead, they refer to the conduct related to Hines's claims regarding tampering with his legal materials. Thus, the references to the Eighth Amendment bear no relationship to the "**conduct** asserted in the complaint." *See Devose*, 42 F.3d at 471 (emphasis added). Hines's safety is obviously a "serious issue," but the Court is only permitted to issue injunctive relief—if otherwise warranted—to protect Hines "from harms alleged **in the complaint** while litigation is pending." *See Frye*, 2006

WL 2502236, at *1. For this reason, the Court recommends the Motions for Preliminary Relief be denied.

### 2. *Dataphase* Factors

Nevertheless, given the serious nature of Hines's allegations, the Court will conduct a brief alternative *Dataphase* analysis. Even if Hines raised concerns about his safety in his Complaint, however, the Court would recommend that the Motions for Preliminary Relief be denied because he has not established that an Eighth Amendment claim would be likely to succeed on the merits. Although this is the third *Dataphase* factor, the Court addresses it first.

#### a. Likelihood of Success on the Merits

"While no single [*Dataphase*] factor is determinative, the probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013) (internal quotation marks and citations omitted). "[A]n injunction cannot issue if there is no chance of success on the merits." *Mid-Am. Real Estate Co. v. Iowa Realty Co., Inc.*, 406 F.3d 969, 972 (8th Cir. 2005); *see also CDI Energy Servs. Inc. v. W. River Pumps, Inc.*, 567 F.3d 398, 402 (8th Cir. 2009) (stating that "the absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied"); *McMahon v. Delta Air Lines, Inc.*, 830 F. Supp. 2d 674, 688 (D. Minn. 2011) (Schiltz, J.) ("If a party's likelihood of succeeding on the merits is sufficiently low, a court may deny a preliminary injunction even if the other three factors—irreparable harm, balance of harms, and the public interest—weigh in the party's favor."). Under the Eighth Amendment, a prison official can be held liable if he or she, "acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health." *Farmer*, 511 U.S. at 843 (internal quotation marks omitted).

Hines has not attempted to demonstrate his likelihood of success on the merits. *See Watkins Inc. v. Lewis*, 346 F.3d 841, 844 (8th Cir. 2003) ("The party seeking injunctive relief bears the burden of proving all the *Dataphase* factors."); *Wickner*, 2010 WL 98940, at *3 ("Although Plaintiff has made conclusory allegations in his affidavit supporting his motion . . . , he has provided no legal support or evidence to support any likelihood of success on any of his claims asserted in his Amended Complaint against Defendants."). In the Motions for Preliminary Relief, Hines relies exclusively on his own conclusory, self-serving statements and declarations. Further—even assuming all of Hines's perceived threats are true—Defendants have demonstrated that they acted reasonably in response to his specific concerns. In response to Hines's report that he is incompatible with another offender, the DOC moved Hines to ACU on July 1, 2016. (Wherley Aff. ¶ 3). This appears to be same incident Hines reported regarding a planned attack on his life on July 1, 2016. *See* [Doc. Nos. 59, 68]. The DOC, through its Incompatibility Review Committee, investigated Hines's report and determined that the situation "did not rise to the level of an incompatibility." (Wherley Aff. ¶ 3). The DOC's investigation—even if it ultimately did not come out in Hines's favor—demonstrates that Defendants have not acted with deliberate indifference in response to Hines's allegations. Therefore, Hines has failed to demonstrate that he is likely to succeed on the merits of an Eighth Amendment claim. Because Hines's likelihood of success is low, preliminary relief is not warranted even if the remaining factors weigh in his favor. *See McMahon*, 830 F. Supp. 2d at 688.

### b.    Remaining Factors

Only one of the remaining factors, however, weighs in Hines's favor. The first *Dataphase* factor—the threat of irreparable harm to the movant—likely weighs in Hines's favor in light of the concerns for his safety. Defendants, however, as described above, are taking reasonable

efforts to address these threats. Additionally, based on Defendants' investigation and Hines's conclusory assertions, it is not clear that his life is in as grave of danger as he perceives it to be.

The second factor—the balance of harms—weighs in favor of Defendants because, as they point out, "DOC staff are in the best position to weigh the information provided from Hines to determine his security and safety in a housing assignment, as well as the impact the decision has on prison administrators' ability to safely and efficiently run the prison." (Defs.' Resp. at 11). Defendants describe these procedures and detail their use of the procedures in response to the July incident. (Wherley Aff. ¶¶ 3–5). Further, the DOC determines where Hines resides based on his offense, history, conduct during incarceration, and other factors. (*Id.* ¶ 11); *see also* (Classification Sys., Div. Directive 202.100, DOC (Aug. 18, 2015), Ex. H, Attached to Wherley Aff.) [Doc. No. 76-1 at 59–61]. The Court agrees with Defendants' assertion that to allow Hines to select the location of his incarceration would allow him to circumvent the DOC's procedures and therefore "would jeopardize penological security and efficiency." (Defs.' Resp. at 13); *see also Goff*, 60 F.3d at 520 (stating that "in the prison context, a request for injunctive relief must always be viewed with great caution" given the "complex and intractable problems of prison administration" (internal quotation marks omitted)); *Wickner*, 2010 WL 98940, at *2 (noting that reluctance to grant injunctive relief "is particularly pronounced where a state prisoner seeks relief in federal court").

Finally, the fourth *Dataphase* factor—the public interest—weighs in favor of Defendants. There is no evidence that Defendants have violated the law and "it is in the public interest for courts to exercise judicial restraint when considering a preliminary injunction in the prison context due to the 'complex and intractable problems of prison administration.'" *Rivera v. Kalla*, No. 12-cv-1479 (MJD/FLN), 2012 WL 7761498, at *6 (D. Minn. Dec. 12, 2012) (Noel, Mag., J.)

13

(quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)), *adopted* 2013 WL 1104786 (Mar. 18, 2013) (Davis, C.J.).

In conclusion, because Hines is not likely to succeed on the merits of an Eighth Amendment claim, and because the balance of harms and public interest weigh against awarding preliminary relief, the Court alternatively recommends the Motions for Preliminary Relief be denied under the *Dataphase* factors.

### 3. Hines's Letters

Although Hines has continued to make claims that his life is threatened at MCF-OPH via letters and a memorandum filed with the Court, the Court will not substantively address those documents in this Report and Recommendation. *See, e.g.* [Doc. Nos. 113, 116, 117].[14] Letters are not an appropriate means of seeking relief from the Court. Parties must present matters to the Court through motion practice, and must file only those documents in support of the motion as permitted by the Local Rules for the District of Minnesota.[15] *See* LR 7.1 (discussing civil motion practice and stating that "[e]xcept with the court's prior permission, a party must not file a memorandum of law except as expressly allowed under" the rule). Hines has demonstrated an understanding of and ability to engage in formal motion practice through the filing of several motions in addition to memoranda responsive to Defendants' motions. Nonetheless, to the extent his submissions seek the same relief as the Motions for Preliminary Relief—access to his

---

[14] Document number 116 is a memorandum in support of Hines's Motions for Preliminary Relief. (Mem. of Law in Supp. of Prelim. Inj. & TRO Pursuant to Rule 65) [Doc. No. 116].

[15] Hines's memorandum was filed in October 2016, nearly five months after Hines's last-filed Motion for Preliminary Relief. *See* (Second Mot. for TRO); (Mem. of Law in Supp. of Prelim. Inj. & TRO Pursuant to Rule 65). Under this Court's Local Rules, motions and memoranda must be filed simultaneously, and therefore, Hine's s memorandum is not timely. LR 7.1.

materials from MCF-Stillwater and placement in specific units of MCF facilities—those requests are denied for the reasons stated in this Report and Recommendation.

## III. RECOMMENDATION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Plaintiff Fredrick Dewayne Hines's Motions for Preliminary Relief [Doc. Nos. 13, 27, 31] be **DENIED**.[16]

Dated: October 25, 2016

<u>s/Steven E. Rau</u><br>
STEVEN E. RAU<br>
United States Magistrate Judge

### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.

---

[16] *See supra* note 1 (providing full titles of these motions).