# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Fredrick Dewayne Hines,

         Plaintiff,

v.

Tom Roy, et al.,

         Defendants.

**Case No. 16-cv-352 (DSD/SER)**

**ORDER AND
REPORT AND RECOMMENDATION**

STEVEN E. RAU, United States Magistrate Judge

The above-captioned case comes before the undersigned on the following six motions: Defendants' First Motion to Dismiss; Hines's First Motion to Amend; Hines's Second Motion to Amend; Defendants' Motion to Stay Discovery; Hines's Motion to Appoint Counsel; and Defendants' Second Motion to Dismiss.[1] This matter was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B)–(C) and District of Minnesota Local Rule 72.1 for a report and recommendation. For the reasons stated below, the Court recommends both Motions to Amend be denied and both Motions to Dismiss be granted.[2] Correspondingly, the Court denies as moot the Motion to Appoint Counsel and the Motion to Stay Discovery.

---

[1]     The formal titles of these motions and corresponding document numbers are: Motion to Dismiss of Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, and Norvak in Their Official Capacities ("First Motion to Dismiss") [Doc. No. 38]; Hines's Motion for Leave to File an Amended Complaint ("First Motion to Amend") [Doc. No. 47]; Hines's Motion to File Amended Complaint Pursuant to Rule 15(a), Fed. R. Civ. P. ("Second Motion to Amend") [Doc. No. 50]; Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, and Norvak in Their Official Capacities' Motion to Stay Discovery ("Motion to Stay Discovery") [Doc. No. 62]; Hines's Motion for the Appointment of Counsel Pursuant to Section(§) 1915 ("Motion to Appoint Counsel") [Doc. No. 71]; and Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, Norvak, Cole, Livingston, and Austreng's Motion to Dismiss ("Second Motion to Dismiss") [Doc. No. 97].

[2]     Because the issues raised in the Motions to Amend and Motions to Dismiss are interrelated and dispositive of this case, the Court makes recommendations with respect to these four motions, rather than issuing an order on the Motions to Amend.

I.      **BACKGROUND**

A.      **Factual Background**

Hines is a prisoner at the Minnesota Correctional Facility in Oak Park Heights ("MCF-OPH"). *See* (Letter Dated Apr. 11, 2016) [Doc. No. 21]. Hines initiated this § 1983 action on February 12, 2016, against Tom Roy ("Roy"), the Commissioner of the Minnesota Department of Corrections ("DOC"); and several employees of the Minnesota Correctional Facility at Stillwater ("MCF-Stillwater"): Steve Hammer ("Hammer"), the warden; Bruce Julson ("Julson"), a program director; Gloria Andreachi ("Andreachi"), a lieutenant; Jenny Carufel ("Carufel"), a lieutenant; Julie Ryan ("Ryan"), a case manager; Adam Murphy ("Murphy"), a sergeant; C. Cole ("Cole"), a registered nurse; Heidi Norvak ("Norvak"), a correctional officer; Kerri Livingston ("Livingston"), a correctional officer; and ten "unknown" officers.[3] (Original Compl. at 1, 3–5). When Hines filed his Original Complaint, he was incarcerated at MCF-Stillwater, but was later transferred to MCF-OPH. *See* (*id.* at 3); (Letter Dated Apr. 11, 2016). All events giving rise to this lawsuit arose at MCF-Stillwater.[4] *See* (Proposed Am. Compl. at 3).

---

[3]     Hines knows the last names, but not first names, of seven of these "unknown" officers: Hamer, Nyemah, Hofer, Snells, Yang, Maroney, and Togou. (Compl. for Violation of Civil Rights Under 42 U.S.C. § 1983, "Original Compl.") [Doc. No. 1 at 5].

[4]     As explained further below, the Court considers the Motions to Dismiss as if they were directed to the Hines's Proposed Amended Complaint. Therefore, the Court relies on the Proposed Amended Complaint for the remaining factual background. In addition to the Defendants named in Hines's Original Complaint, Hines's Proposed Amended Complaint lists the following MCF-Stillwater employees as Defendants: special investigator Mike McCarthy; Alphonso Nyemah, Amanda Hofer, and John Doe, sergeants; Andrew Rudesil ("Rudesil"), Chrystal Livingston ("Livingston"), Nicholas Maronic, and Jonathan Hamer, correctional officers; Humphrey Torboh ("Torboh"), a correctional officer and hospital escort; and four other John Does who are correctional officers. (Proposed Am. Compl., Attached to Second Mot. to Amend Compl.) [Doc. No. 50-1 at 3–4]. Some of the defendants named in Hines's Proposed Amended Complaint appear to be the unknown defendants Hines previously identified by their last names only. *Compare* (Original Compl. at 5) *with* (Proposed Am. Compl. at 3–4). (Although Hines filed two Motions to Amend, he only filed one proposed Amended Complaint, which is attached to the Second Motion to Amend.).

The primary thrust of Hines's claims is that correctional officers conspired to separate Hines from his legal work and interfered with his constitutional right of access to the courts.[5] *See* (Proposed Am. Compl. at 5–6). Hines alleges that on May 16, 2015, Rudesil provided him with the opportunity to shower. (*Id.* at 7). While Hines was in the shower, Murphy or Rudesil allowed "several unknown officers" access to Hines's cell.[6] (*Id.* at 7). Hines checked his trial transcript, "brief[,] and addendum" and found that "several had been changed and records were added as well."[7] (*Id.* at 8). Two inmates housed in the same wing reported observing officers enter the segregation wing through the back door and enter Hines's cell. (*Id.* at 9). Hines's attempts to address the events of May 16, 2015, with MCF-Stillwater through its grievance procedure and other methods, including directly contacting MCF offices and writing to various civil rights and legal organizations, were unsuccessful. *See* (*id.* at 9–11).

On May 23, 2015, Hines experienced chest pains and MCF-Stillwater employees came to his cell to escort him to the medical unit. (*Id.* at 11). Hines insisted on bringing his legal work with him. (*Id.* at 11–12). Emergency personnel took Hines to a hospital for further examination, and Cole, Andreachi, and other correctional officers assured Hines that his legal work would be safe while he was at the hospital. (*Id.* at 12–13). Hines insisted, however, on being able to sign paperwork demonstrating that he was refusing further medical treatment if he could not take his

---

[5]     Hines's "legal work" refers to "the fabricated trial transcripts, records, Plaintiff's pro se brief and addendum, appeal[late] attorney's original brief and the state's original brief." (Proposed Am. Compl. at 14). Although not specified, the Court presumes these documents relate to the criminal case for which Hines is incarcerated.

[6]     It is not clear who permitted access to Hines's cell. *See* (Proposed Am. Compl. at 7) (stating that while Hines was in the shower, "Defendant Rudesil who controls all doors allowed by governing authority Defendant Murphy several unknown officers to enter" the segregation wing). Further, Hines alleges that at this time, all officers working in segregation were white. (*Id.* at 7). Hines is African-American. (*Id.* at 5).

[7]     While it is somewhat unclear what was changed and added, Hines's primary concern is that trial transcripts were changed. *See, e.g.*, (Proposed Am. Compl. at 9)

legal work to the hospital. *See* (*id.* at 13). Eventually, Andreachi gave Hines permission to take his legal work with him after she searched it. (*Id.*). Andreachi told another MCF officer, Torboh, that if Hines "goes to surgery" she "want[s] that bag." (*Id.* at 14). Torboh and another MCF-Stillwater correctional officer had a black bag with them when they escorted Hines to Lakeview Hospital in Stillwater. (*Id.*). Hines alleges that Andreachi told several other MCF officers to obtain his legal work if he went into surgery. *See* (*id.* at 14–15).

The following day, two unknown officers escorted Hines back to MCF-Stillwater. (*Id.* at 16). Hines alleges that upon arrival, yet another unknown officer separated him from his legal work. (*Id.* at 17). Shortly thereafter, the bag containing Hines's legal work was returned to Hines, but Hines noticed that his "bag ha[d] been opened" and the "knot on [the] bag was re-tied loose." (*Id.* at 18). At this point, Hines heard "a large quantity of papers being ripped up" in the adjacent cell.[8] (*Id.*).

Hines further alleges that on May 27, 2016, Murphy and Rudesil conspired to separate him from his legal work by telling him he had a doctor's appointment, psychology appointment, and attorney call. (*Id.* at 19–20). Hines declined to attend these appointments or answer his attorney's call because he did not want to be separated from his legal work. (*Id.*). Hines unsuccessfully attempted to address the events of May 16 and 23 with Roy and Hammer. *See* (*id.* at 20).

Hines alleges that "soon after" he filed his grievances and this lawsuit, he became the target of harassment and retaliation as follows. First, Hines alleges that some Defendants began

---

[8]     Elsewhere, Hines states that these unknown correctional officers "took and exchanged those documents," which he describes as "states' and appeal[late] attorney's original briefs." (Proposed Am. Compl. at 29).

to "toss [his] food."[9] (*Id.* at 21); *see also* (*id.* at 20).

Second, Livingston told Hines that he was moving to "A-East."[10] (*Id.* at 22). Hines perceived this action "as a threat upon his life" because Andreachi runs that unit and she "could have easily had [Hines] stabbed or beaten to death, due to [his] status as a sex offender, as well as to stop the court from knowing and finding out the truth." (*Id.*). Hines refused to move, and Livingston falsely wrote that Hines was "disorderly."[11] (*Id.*).

Third, on April 6, 2016, Hines was transferred to MCF-OPH, which he asserts was retaliatory for filing this lawsuit and "exposing the conspiracy and deliberate indifferences that were exhibited and invidious discrimination because Plaintiff was a sex offender standing up for his rights not to be discriminated against without equal protection of the laws." (*Id.* at 22–23). Hines further alleges MCF-Stillwater retained his legal work, causing him to miss a deadline to appeal his re-sentencing. (*Id.* at 24). Although Hines states he was ultimately provided with his property on May 11 or 12, 2016, he "found several letters (religious) studies he had not been given nor knew if they had been sent at all some 1 yr. old." (*Id.*). He also alleged that his "indigent envelopes" had all been confiscated, preventing him "from alerting [the] court." (*Id.*).

Finally, Hines alleges that several Defendants told inmates and other MCF-Stillwater staff that Hines was "a sex offender child molester," and referred to him by derogatory names

---

[9]    Hines does not allege that all Defendants are responsible for all actions. *See generally* (Proposed Am. Compl.). For the purpose of this Report and Recommendation, however, it is not always relevant which Defendants took which actions. Therefore, the Court uses "Defendants" to refer to more than one Defendant named in the Proposed Amended Complaint, and not to refer to all named Defendants.

[10]   The date of this incident is not specified. *See* (Proposed Am. Compl. at 22).

[11]   This factual allegation states, verbatim, "Plaintiff provided court with records, Livingston wrote disorderly conduct on Plaintiff's, wrote, which was false, that Plaintiff was disorderly." (Proposed Am. Compl. at 22). Construing all factual inferences in Hines's favor, the Court assumes that the document "Livingston wrote" was a false disciplinary report regarding Hines's disorderly conduct. *See* (*id.*).

reflecting that status. (*Id.* at 18). Hines alleges that this invoked a "prisoner's code" against sex offenders, which made Hines fear retaliation from other inmates, placing his "life in danger of being assaulted." (*Id.* at 19). As a result, Hines alleges he did not shower, had to use anti-fungal cream, and lost weight and muscle tone. (*Id.* at 18–19).

Hines alleges eight claims, some of which are duplicative: (1) conspiracy "to obstruct the due course of justice in a state court"; (2) "denying equal protection of the laws"; (3) depriving Hines of equal protection of the laws under the Fourteenth Amendment; (4) "breach of duty to act and protect"; (5) "violating the federal prohibitions of the Fourteenth Amendment"; (6) violating Hines's Fourth Amendment "right to be secure in his papers"; (7) violating the Eighth Amendment's prohibition of cruel and unusual punishment; and (8) "retaliatory treatment." (*Id.* at 2) (internal quotation marks omitted); *see also* (*id.* at 29–31) (identifying specific Defendants and claims against them).

Hines seeks the following relief: an injunction ordering Roy to (1) "immediately arrange for [Hines] to be transferred to MCF-Moose Lake to participate in the court ordered MSOP treatment program"; (2) "remove Plaintiff from punitive segregation and place [Hines] in general population at MCF-Moose Lake with restoration of all rights and privileges"; and (3) "carry out the mandated order, without delay, for treatment, directed by such court recommended mand[a]tory order." (*Id.* at 31). Hines also seeks compensatory and punitive damages from Defendants. (*Id.* at 31–32).

### B.      Procedural Background

As stated above, Hines initiated this lawsuit on February 12, 2016. (Original Compl.). Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, and Norvak, in their official

capacities, moved to dismiss the Original Complaint on May 10, 2016.[12] (First Mot. to Dismiss). Defendants argued that the Eleventh Amendment bars Hines's claims for damages; Hines cannot maintain a § 1983 cause of action against Defendants in their official capacities; and the federal court lacks the authority to grant much of the relief Hines seeks. *See* (Mem. in Supp. of First Mot. to Dismiss at 6–11).

On June 3, 2016, the Court received Hines's First Motion to Amend. Although Hines did not attach a proposed amended complaint, he expressed his desire to clarify in what capacities Defendants were sued and add additional Defendants and factual allegations. *See* (First Mot. to Amend Compl.). On the same day, Hines also submitted a memorandum opposing Defendants' First Motion to Dismiss. (Pl.'s Mem. of Law in Opp'n to First Mot. to Dismiss) [Doc. No. 48].

Five days later, the Court received Hines's Second Motion to Amend. In this motion, Hines stated that he intended to dismiss claims against the DOC, as well as all claims for injunctive relief and claims for relief seeking criminal charges to be brought against certain Defendants. (Second Mot. to Amend Compl. at 1). Hines also sought to add Defendants and request a jury trial. (*Id.*). Hines attached a proposed amended complaint, in which he expands his allegations regarding the incidents of May 16, 23–24, and 27, 2016, as described above. (Proposed Am. Compl. at 1–21). Additionally, Hines alleges that he was retaliated against for filing grievances and this lawsuit. (*Id.* at 21–25).

Defendants oppose Hines's Second Motion to Amend, arguing Hines failed to follow the Local Rules and his Proposed Amended Complaint is futile because under *Heck v. Humphrey*, 512 U.S. 477 (1994), Hines cannot challenge the validity of his criminal conviction through a

---

[12]     These Defendants argued that they were the only Defendants served to date, and that they had only been sued in their official capacities. (Mem. of Law in Supp. of First Mot. to Dismiss, "Mem. in Supp. of First Mot. to Dismiss") [Doc. No. 39 at 2].

§ 1983 suit.[13] (Defs.' Mem. Opposing Second Mot. to Amend) [Doc. No. 52 at 3–5]. Defendants also argue that the Court cannot grant the injunctive relief Hines requests and that the injunctive relief is not related to the claims in his Proposed Amended Complaint. (*Id.* at 5–6).

In July 2016, Hines moved the Court to appoint counsel, and Defendants moved to stay discovery, which Hines opposed.[14] (Mot. to Appoint Counsel); (Mot. to Stay Disc.); (Mem. of Law in Opp'n of Defs.' Mot. to Stay Disc.) [Doc. No. 78]. Defendants also responded to Hines's First Motion to Amend Complaint, arguing the motion should be denied because Hines failed to follow the Local Rules and relying on their opposition to Hines's Second Motion to Amend. (Defs.' Mem. Opposing Pl.'s Mots. (Docs. 13, 27, 31, 47)) [Doc. No. 74 at 18] ("The DOC Defendants opposed [Hines's Second Motion to Amend] because it did not comply with the Court's rules and because amendment would be futile. To the extent the [First Motion to Amend] is considered separately, the Court should deny the motion because it does not comply with the Court's rules." (citation omitted)).[15]

On August 9, 2016, Defendants filed their Second Motion to Dismiss, again arguing *Heck* bars Hines's claims. (Defs.' Mem. of Law in Supp. of Mot. to Dismiss, "Mem. in Supp. of Second Mot. to Dismiss") [Doc. No. 98 at 6–8]. Defendants also argue Hines failed to state a claim for conspiracy to violate his civil rights, failed to state a claim based on access to the courts, cannot maintain an action based on violations of criminal statutes, and failed to state an equal protection claim. (*Id.* at 8–16). Defendants further argue that Hines's claims for monetary damages are prohibited. (*Id.* at 16–18). Finally, Defendants argue that the Court cannot award the

---

[13]    This argument was also made, albeit in a footnote, in support of the First Motion to Dismiss. (Mem. in Supp. of First Mot. to Dismiss at 6 n.4).

[14]    Defendants did not respond to Hines's Motion to Appoint Counsel.

[15]    This memorandum includes responses to Hines's motions for preliminary relief, the subject of the Court's previous R&R. *See generally* (Defs.' Mem. Opposing Pl.'s Mots. (Docs. 13, 27, 31, 47)); (R&R Dated Oct. 25, 2016) [Doc. No. 119].

injunctive relief Hines seeks and he has not alleged facts in support of his request for relief regarding retaliation and transfer. (*Id.* at 18–21). Hines responded, and Defendants filed a reply. (Mem. of Law in Opp'n of Second Mot. to Dismiss, "Resp. to Second Mot. to Dismiss") [Doc. No. 106]; (Defs.' Reply Mem. of Law in Supp. of Second Mot. to Dismiss, "Reply") [Doc. No. 111]. Although the Second Motion to Dismiss is directed toward Hines's Original Complaint, Defendants argue that Hines's Proposed Amended Complaint "similarly fails to state a cognizable claim upon which relief may be granted, for the same reasons as the [O]riginal [C]omplaint." (Reply at 3 n.2).

## II.  DISCUSSION

### A.  Motions to Dismiss and Motions to Amend

First, the Court will address the procedural irregularities that accompany competing and overlapping Motions to Amend and Motions to Dismiss.

The First Motion to Dismiss was filed on behalf of only the Defendants who had been served at that time. (Mem. in Supp. of First Mot. to Dismiss at 2). The Second Motion to Dismiss was filed on behalf of all individually named Defendants and specifically waived any remaining service issues. (Mem. in Supp. of Second Mot. to Dismiss at 1–2 n.4) ("In order to expedite the proceedings and because the marshals are attempting to serve the Defendants, the Defendants bringing this motion waive further service requirements and bring this motion in both their individual and official capacities."). Arguably, the First Motion to Dismiss is moot because the Second Motion to Dismiss is filed on behalf of the same Defendants. The Court primarily refers to the arguments made in connection with the Second Motion to Dismiss, but nonetheless considers the arguments made in both Motions to Dismiss. Because both Motions to Dismiss address the Original Complaint, the Court will address the Motions to Dismiss first.

Further, because Hines's Motions to Amend appear to be directed at curing the deficiencies identified in the First Motion to Dismiss, the Court considers whether Hines's Proposed Amended Complaint would alter the Court's analysis on the Motions to Dismiss.[16] *See Besett v. Wadena County*, Civ. No. 10-934 (JRT/LIB), 2010 WL 5439720, at *6 (D. Minn. Dec. 7, 2010) (Brisbois, Mag. J.) ("The Eighth Circuit has held that, as a procedural matter, it is plainly erroneous for a district court to grant a motion to dismiss, and then to deny a pending motion to amend as moot, without consideration of the merits of the motion to amend."), *adopted* 2010 WL 5441937 (Dec. 28, 2010) (Tunheim, J.); *see also Pure Country, Inc. v. Sigma Chi Fraternity*, 312 F.3d 952, 956 (8th Cir. 2002) ("If anything, Pure Country's motion to amend the complaint rendered moot Sigma Chi's motion to dismiss the original complaint.").

The Court finds that the Motions to Dismiss should be granted. Further, because Hines's Proposed Amended Complaint would not save his claims from dismissal, the Court recommends his Motions to Amend be denied as futile.

## 1.    Legal Standards

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted. The complaint must contain "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Pro se pleadings must be construed liberally, but they "may not be merely conclusory: the complaint must allege facts, which if true, state a claim as a matter of law." *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). A court accepts

---

[16]    Regardless of any procedural irregularities associated with Hines filing successive motions to amend, the Court considers them together as if they were a single motion and reviews the proposed amended complaint to determine whether an amended pleading should be permitted.

the facts alleged in the complaint as true, and grants "reasonable inferences in favor of the nonmoving party." *Lind v. Midland Funding, L.L.C.*, 688 F.3d 402, 405 (8th Cir. 2012). Legal conclusions "must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. The factual allegations, however, "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

Rule 15(a)(1) provides that a party may amend its pleading once as a matter of course "21 days after serving it" or "if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Unless there is a good reason for denial, such as undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment, leave to amend should be granted." *Becker v. Univ. of Neb. at Omaha*, 191 F.3d 904, 907–08 (8th Cir. 1999) (internal quotation marks omitted). "Denial of a motion for leave to amend on the basis of futility means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Zutz v. Nelson*, 601 F.3d 842, 850 (8th Cir. 2010).

### 2.     Analysis

Regardless of the legal theories under which Hines seeks relief, his claims fall into the

following categories: (1) claims regarding access to the courts; (2) an equal protection claim; (3) and a retaliation claim. The Court addresses each in turn.

### a.        Access to the Courts

The majority of Hines's Proposed Amended Complaint is devoted to allegations that various Defendants conspired to separate him from and alter his legal work, thereby interfering with his access to the courts. Apart from the factual circumstances surrounding those incidents, Hines alleges the following injuries. In his Proposed Amended Complaint, he alleges that Defendants conspired to "obstruct" justice in state court and "hindered judicial redress, obstructed the due course of justice, and aided with a fraud being practiced on the court" and "prevent[ed] a state court from knowing the truth." (Proposed Am. Compl. at 2, 6). In response to Defendants' Second Motion to Dismiss, Hines makes the following arguments: Defendants' actions were "done to stop the exposure of injustice that took place in that state court proceeding"; Defendants "knowingly, and willfully conspired to interfere with [his] direct appeal"; Defendants "intentionally interfered with the exercise of a federally protected right"; "Hines was exercising [his] right to appeal [his] conviction[,] which was a nonfriv[o]lous claim for violation of Hines'[s] constitutional rights"; and "Hines presented the Court with a claim that showed acts that hindered, and prohibited judicial redress. Thus the crux of Hines'[s] complaint as indicated was a violation of Hines'[s] federal protected rights, to seek redress from a conviction." (Resp. to Second Mot. to Dismiss at 7, 10, 11, 12); *see also, e.g.*, (*id.* at 13, 14, 16, 19. 21, 22) (making similar statements).

Construing Hines's complaint liberally, the Court understands Hines to be raising access-to-the-courts claims. But because he has not pleaded an actual injury, he has failed to sufficiently state a claim upon which relief can be granted and the Court recommends these claims be

dismissed. Further, to the extent Hines's success in this case necessarily calls into question the conviction for which he is imprisoned, *Heck* bars such a claim.

### i.    Actual Injury

To maintain an access-to-the-courts claim, a complaint "should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued." *Christopher v. Harbury*, 536 U.S. 403, 417 (2002) (footnote omitted). In other words, the complaint must allege an "actual injury, that is, the hindrance of a nonfrivolous and arguably meritorious underlying legal claim." *Hartsfield v. Nichols*, 511 F.3d 826, 831–32 (8th Cir. 2008) (internal quotation marks omitted).

Hines failed to allege an actual injury that demonstrates he was denied access to the courts. Hines does not identify any specific consequence of Defendants allegedly exchanging his trial transcripts or otherwise interfering with this legal work on May 16 or 24, 2016. *See* (Proposed Am. Compl. at 7–18). As described above, Hines makes some conclusory arguments regarding injury. *See* (Proposed Am. Compl. at 2, 6). To the extent these statements intend to allege an injury, any injury is speculative. Even construing the Proposed Amended Complaint liberally, Hines alleges—at best—that Defendants' actions interfered with some unspecified claim Hines intended to make in an unspecified state court proceeding related to a criminal case. *See, e.g.*, (Resp. to Defs.' Second Mot. to Dismiss at 7, 10, 11, 12). This is not enough to satisfy the requirement that he describe the underlying claim and plead an actual injury to maintain an access-to-the-courts case.[17] *See Hartsfield*, 511 F.3d at 831–32. Therefore, Hines failed to state a claim for access-to-the-courts upon which relief can be granted.

---

[17]    The same reasoning applies Hines's claim that MCF-Stillwater's retention of his legal work caused him to miss a deadline to appeal his re-sentencing. *See* (Proposed Am. Compl. At 24). Hines does not allege what specific claim he was prevented from making on appeal regarding his sentence.

### ii.   *Heck*

Although Hines does not allege an actual injury, Hines appears to allege that because of Defendants' actions, his injury is that he lost an opportunity to seek relief in the past, and cannot now seek the same relief. *See Christopher*, 536 U.S. at 414, 416 (describing "backward-looking cases" as those that "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable") (footnotes omitted); *cf. id.* at 413 (describing a separate category of claims alleging "that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time"). To the extent Hines's access-to-the-courts claims is "backward-looking" and Hines intends to use this § 1983 case to directly challenge his conviction, *Heck* and its progeny bar his claims.

A state prisoner may only challenge the fact or duration of his confinement through a habeas corpus petition. *Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). An action that "call[s] into question the lawfulness of [a] conviction or confinement" is not cognizable under 42 U.S.C. § 1983. *Heck*, 512 U.S. at 483. In other words,

> in order to recover damages for [an] allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Id.* at 486–87 (footnote and citation omitted). This rule became known as the "favorable termination" rule. *See id.* at 492 (Souter, J., concurring). A claim for relief that "necessarily impl[ies] the invalidity of the punishment imposed[] is not cognizable under § 1983." *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). The Supreme Court summarized its jurisprudence with respect to *Heck* and related cases as follows:

> [A] state prisoner's § 1983 action is barred (absent prior invalidation)—no matter the relief sought (damages or equitable relief), no matter the target of the prisoner's suit (state conduct leading to conviction or internal prison proceedings)—**if** success in that action would necessarily demonstrate the invalidity of confinement or its duration.

*Wilkinson v. Dotson*, 544 U.S. 74, 81–82 (2005) (emphasis in original).

As relevant to *Heck* and its progeny, Hines's access-to-the-courts claims appear to "call[] into question" his conviction. *See Heck*, 512 U.S. at 486–87. The allegations in Hines's Proposed Amended Complaint and in his arguments opposing the Second Motion to Dismiss demonstrate that Hines's claim is that if Defendants had not interfered with his legal work, he would have been able to challenge his conviction.[18]

This case is similar to *Vann v. Smith*, No. 13-cv-1316 (SRN/JSM), 2013 WL 5676287 (D. Minn. Oct. 18, 2013) (Nelson, J.). In *Vann*, the plaintiff alleged that defendants prevented the filing of his pro se supplemental petition for review challenging his sentence. *Id.* at *5. The Honorable Janie S. Mayeron, United States Magistrate Judge, recommended that the claim be dismissed because *Heck* bars the plaintiff's access-to-the-courts claim.[19] *Id.* at *8–9. She concluded that

> if plaintiff were to show that defendants unconstitutionally prevented him from raising a legitimate challenge to his current prison sentence, then the validity of his sentence obviously would be in doubt. In short, a judgment in plaintiff's favor on his current access-to-the-courts claim would necessarily imply that his sentence is invalid. Therefore, plaintiff's access-to-the-courts claim must be

---

[18]     Hines does not otherwise allege that his "conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *See Heck*, 512 U.S. at 486–87. Hines does, however, have a habeas case pending in this District pursuant to 28 U.S.C. § 2254. *See Hines v. Smith*, No. 16cv2345 (DSD/SER) (filed July 5, 2016).

[19]     The Honorable Susan Richard Nelson, United States District Judge, adopted Judge Mayeron's Report and Recommendation. *See Vann*, 2013 WL 5676287, at *1–4. Both Judge Nelson's order and Judge Mayeron's Report and Recommendation are found at the cited Westlaw location. *See generally id.*

barred by *Heck.*

*Id.* at 9.[20]

Hines's access-to-the-courts claims suffer the same infirmities as those in *Vann.* If Hines were able to show, through this lawsuit, that Defendants unconstitutionally prevented him from raising a legitimate challenge to his state court conviction, that conviction would be called into doubt. Therefore, *Heck* bars Hines's claim.[21]

### iii.   Related Claims

Hines raises his access-to-the-courts claims under various theories of liability, including the Fourth, Eighth, and Fourteenth Amendments; breach of duty; and conspiracy. *See generally* (Proposed Am. Compl.). Because the Court recommends dismissal of Hines's access-to-the-courts claims, the Court correspondingly clarifies that these claims should be dismissed regardless of the specific constitutional provision or legal theory Hines employs to seek relief. *See Christopher*, 536 U.S. at 415 n.12 ("Decisions of this Court have grounded the right of access to courts in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, the Fifth Amendment Due Process Clause, and the Fourteenth Amendment Equal Protection and Due Process Clauses." (citations omitted)).

Hines alleges no separate factual allegations related to his Fourth and Eighth Amendment claims. Therefore, even under a liberal reading of the Proposed Amended Complaint, any violation of the Fourth Amendment, presumably based on Defendants' unauthorized access to his cell or bag containing legal work, is related to his access-to-the-courts claims. Further,

---

[20]    Judge Mayeron also found that the plaintiff failed to allege an actual injury. *Vann*, 2013 WL 5676287, at *7–8.

[21]    The same reasoning applies to Hines's allegation that MCF-Stillwater's retention of his legal work caused him to miss a deadline to appeal his re-sentencing. *See* (Proposed Am. Compl. at 24). If Hines's claim is successful with respect to that allegation in this law suit, the duration of his sentence is called into question, contrary to *Heck. See Wilkinson*, 544 U.S. at 81–82.

although Hines invokes both the Eighth Amendment and its prohibition against cruel and unusual punishment, he does not allege a set of facts distinct from his access-to-the-courts claims under the Eighth Amendment or its provisions. *See, e.g.*, (Proposed Am. Compl. at 29–31). Similarly, Hines's claims for breach of duty are based on his access-to-the-courts claims. He alleges that certain Defendants failed to intervene and investigate his allegations regarding exchanging his legal work. *See, e.g.*, (*id.* at 20, 29–30). Because Hines has not alleged an actual injury to demonstrate that he lost his right of access to the courts, he cannot maintain a claim that certain Defendants failed to intervene or investigate an injury that is not pleaded.

Finally, Hines's conspiracy claims rest upon his access-to-the-courts claims, and because he has failed to state an access-to-the-courts claim, he has likewise failed to state a conspiracy claim. *See Robbins v. Becker*, 794 F.3d 988, 997 (8th Cir. 2015) ("Absent a constitutional violation, there is no actionable conspiracy claim." (internal quotation marks omitted)).

For the foregoing reasons, the Court recommends that the Defendants' Motions to Dismiss be granted and that the Motions to Amend the Complaint be denied as futile with respect to Hines's access-to-the-courts claims.

### b.     Equal Protection Claim

"The Equal Protection Clause requires the government treat all similarly situated people alike." *Creason v. City of Washington*, 435 F.3d 820, 823 (8th Cir. 2006) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "To state an equal protection claim, [a plaintiff] must have established that he was treated differently from others similarly situated to him." *Johnson v. City of Minneapolis*, 152 F.3d 859, 862 (8th Cir. 1998). This claim must be based on some prohibited form of discrimination. *See Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008).

17

To the extent Hines's equal protection claim is based on his discriminatory treatment in being denied access to the courts, he fails to state such a claim for the reasons stated above. *See, e.g.*, (Proposed Am. Compl. at 29–31).

To the extent Hines attempts to assert an independent equal protection claim grounded in discrimination based on race or his status as a sex offender, he has failed to state a claim. *See* (Proposed Am. Compl. at 6) (alleging that he cannot "be discriminated against because of race or classification as a sex offender"). Hines alleges that he is African American and some of the Defendants are white. *See, e.g.*, (Proposed Am. Compl. at 5, 7, 13, 18). He also alleges that several Defendants told inmates and other MCF-Stillwater staff that Hines "was a sex offender child molester." (*Id.* at 18). Hines alleges that this invoked a "prisoner's code against sex offenders," which "induced fear of retaliation from inmates" and he felt like his "life [was] in danger of being assaulted" as well as "stress, worry, fear, anxiety of being beaten, killed or poisoned" by Defendants. (*Id.* at 18–19).

Hines's equal protection claim fails because he does not allege in his Proposed Amended Complaint that he was treated differently than others who were similarly situated. In his Response to the Second Motion to Dismiss, Hines alleges that "no one else experienced" the same things he did with respect to "taking and exchanging . . . legal court documents" and having "food toss[ed] to them like a dog" and "[n]o one else was ill-treated like Hines."[22] (Resp. to Second Mot. to Dismiss at 27, 28). Even if this purported clarification was properly pleaded, it

---

[22]     Hines alleges that some Defendants "tossed . . . food in his room" and Nyemah "then stare[d] at [Hines] like [he] was a dog," although there is no corresponding allegation that this action is based on his race or classification as a sex offender. *See* (Proposed Am. Compl. at 20).

is insufficient to establish an equal protection claim because it is conclusory.[23] *See Iqbal*, 556 U.S. at 678 ("A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." (internal quotation marks omitted)). Hines has not alleged any **facts** that he was treated differently than anyone else similarly situated. *See Knutson v. Ludeman*, Civil No. 10-357 (PJS/LIB), 2011 WL 821253, at *11 (D. Minn. Jan. 12, 2011) (Brisbois, Mag. J.) (recommending dismissal of equal protection claim because the plaintiff "has not alleged any **facts** showing that he has been treated differently from other similarly situated individuals based on some forbidden form of discrimination"), *adopted as modified* 2011 WL 808189 (Mar. 1, 2011) (Schiltz, J.).

    With respect to Hines's equal protection claim, the Court recommends that the Motions to Dismiss be granted and that the Motions to Amend be denied as futile.

### c.    Retaliation

    Hines alleges he was retaliated against for filing grievances and initiating this lawsuit. *See, e.g.*, (Proposed Am. Compl. at 21). For a retaliation claim to survive a motion to dismiss, a plaintiff must plead "that he engaged in protected activity and that Defendants, to retaliate for the protected activity, took adverse action against [the plaintiff] that would chill a person of ordinary firmness from engaging in that activity." *Lewis v. Jacks*, 486 F.3d 1025, 1028 (8th Cir. 2007). Examples of protected activity include both filing a prison grievance and filing an inmate lawsuit. *Id.* at 1029. "Merely alleging that an act was retaliatory is insufficient." *Meuir v. Green County Jail Emps.*, 487 F.3d 1115, 1119 (8th Cir. 2007).

    Hines's claims regarding retaliation fail to state a claim for relief because they are

---

[23]    "[A] memorandum is not the appropriate place to attempt to amend a pleading to raise a new claim." *Nelson v. Bank of N.Y. Mellon*, No. 12-cv-1096 (SRN/SER), 2012 WL 4511165, at *4 n.2 (D. Minn. Oct. 1, 2012) (Nelson, J.).

conclusory. First, Hines does not allege any facts that, if true, demonstrate his claims that Defendants "toss[ed] [his] food" because he filed grievances or the instant lawsuit. *See* (Proposed Am. Compl. at 20).

Second, Hines's claim based on Livingston telling him he had to move internally within MCF-Stillwater, Hines's refusal to move, and Livingston's subsequent disciplinary report, fails to state a claim upon which relief can be granted. *See* (Proposed Am. Compl. at 22). "[O]therwise proper acts are actionable under § 1983 if done in retaliation for filing a grievance pursuant to established prison procedures." *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir. 1990). To the extent Hines alleges that the order that he move internally within MCF-Stillwater was retaliatory, he alleges no facts that allow the court to infer that his filing of grievances or this lawsuit were the motivation for the move.

To the extent this portion of his retaliation claim is grounded in Livingston's false disciplinary report, he has failed to state a claim. "[A] prisoner can state a claim of retaliation by alleging that disciplinary actions were based upon false allegations." *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir. 1993) (internal quotation marks omitted). But if "the alleged retaliation arose from discipline imparted for acts that a prisoner was not entitled to perform," then the prisoner has not stated a claim. *Id.* Here, although Hines alleges this report was "false," he does not allege any facts that support that claim.

It is not clear whether Hines alleges that Livingston wrote that Hines was disorderly for refusing to move, or that Hines was disorderly for engaging in some other allegedly disorderly conduct. *See* (Proposed Am. Compl. at 22). This lack of clarity demonstrates that Hines has failed to state claim. If Hines intends to allege that Livingston wrote that Hines was disorderly for refusing to move, he has failed to allege sufficient facts to support this claim. For example,

Hines does not allege that he was entitled to refuse to move to a different unit, and therefore, any report based on his refusal to do so could only be retaliatory. If Hines intends to allege that Livingston wrote that Hines was disorderly for engaging in some other allegedly disorderly conduct, Hines has failed to allege what that conduct was. Regardless of what conduct Livingston's "false report" addressed, Hines failed to allege any facts that permit the Court to infer that the "false report" was made in retaliation for Hines filing grievances or initiating this lawsuit.

Finally, "prison officials cannot lawfully transfer a prisoner for retaliatory reasons alone." *Goff*, 7 F.3d at 738. "To successfully argue retaliatory transfer in violation of his constitutional rights pursuant to § 1983, [a plaintiff] must prove that a desire to retaliate was the actual motivating factor behind the transfer." *Rouse v. Benson*, 193 F.3d 936, 940 (8th Cir. 1999) (internal quotation marks omitted). Here, Hines alleges he was transferred to MCF-OPH which was "clear acts of retaliation for filing civil suit." (Proposed Am. Compl. at 23). Hines's claim, however, is a mere allegation that the transfer was retaliatory; he does not plead any facts that, if true, demonstrate that his grievances or lawsuit were the motivating factors for his transfer. *See* (*id.*); *see also Meuir*, 487 F.3d at 1119.

### d.    Conclusion

The Court concludes that *Heck* bars Hines's access-to-the-courts claim. The Court also finds that Hines fails to sufficiently plead claims based on access to the courts, equal protection, and retaliation. Addressing any other arguments raised in the Motions to Dismiss is unnecessary.

The Court recommends granting the Motions to Dismiss and denying Hines's Motions to Amend as futile.

### B.    Remaining Motions

The Court recommends dismissing this action without prejudice for the reasons articulated above. Therefore, the Court denies Defendants' Motion to Stay Discovery and Hines's Motion to Appoint Counsel as moot.

## III.   CONCLUSION

Based on all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that

1.   Motion to Dismiss of Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, and Norvak in Their Official Capacities [Doc. No. 38] be **GRANTED**;

2.   Plaintiff Frederick Dewayne Hines's ("Hines") Motion for Leave to File an Amended Complaint [Doc. No. 47] be **DENIED**;

3.   Hines's Motion to File Amended Complaint Pursuant to Rule 15(a), Fed. R. Civ. P. [Doc. No. 50] be **DENIED**;

4.   Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, Norvak, Cole, Livingston, and Austreng's Motion to Dismiss [Doc. No. 97] be **GRANTED**; and

5.   This action be **DISMISSED without prejudice.**

Based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

6.   Defendants Commissioner Roy, Hammer, Julson, Andreachi, Carufel, Ryan, Murphy, and Norvak in Their Official Capacities' Motion to Stay Discovery [Doc. No. 62] is **DENIED as moot**; and

7.   Hines's Motion for the Appointment of Counsel Pursuant to Section(§) 1915

22

[Doc. No. 71] is **DENIED as moot**.


Dated: November 14, 2016


 *s/Steven E. Rau*
STEVEN E. RAU
United States Magistrate Judge


### Notice

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore, not appealable directly to the Eighth Circuit Court of Appeals.

Under D. Minn. LR 72.2(b)(1) "a party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after objections are filed; or (2) from the date a timely response is filed.